1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LARRY BANKS,

11            Plaintiff,                    No. CIV S-02-0374 GEB KJM P

12       vs.

13   JOSEPH A. BICK, et al.,

14            Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16            Plainitff is a state prison inmate proceeding pro se with a civil rights action under

17   42 U.S.C. § 1983.  He alleges he was denied adequate medical treatment for a kidney infection in

18   December 2001.  Defendants Carter, Smith, Collins and Ho have filed a motion for summary

19   judgment.

20   I. Summary Judgment Standards Under Rule 56

21            Summary judgment is appropriate when it is demonstrated that there exists "no

22   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

23   matter of law."  Fed. R. Civ. P. 56(c).

24   /////

25   /////

26   /////

1

1

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56©).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

2

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

2  1436 (9th Cir. 1987).

3     In the endeavor to establish the existence of a factual dispute, the opposing party

4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

8  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

9  committee's note on 1963 amendments).

10    In resolving the summary judgment motion, the court examines the pleadings,

11 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

13 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

14 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

15 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

16 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

17 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

18 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19 show that there is some metaphysical doubt as to the material facts. . . . Where the record taken

20 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

21 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22    On March 21, 2002, the court advised plaintiff of the requirements for opposing a

23 motion based on Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

24 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v.

25 Eikenberry, 849 F.2d 409 (9th Cir. 1988).

26 /////

II.  Defendants' Objections To Plaintiff's Evidentiary Support

Plaintiff's opposition to summary judgment is supported by a number of documents, including the defendants' responses to requests for admissions and interrogatories, medical records, and various portions of the CDC's Departmental Operations Manual (DOM). Defendants object to the records and policies as hearsay and irrelevant to the issues in the case.[1] Their objections to the discovery documents are based on plaintiff's failure to designate which portions of the documents are relevant and on their claim that the discovery responses are consistent with their declarations.

A court may consider only admissible evidence in support of a motion for summary judgment.  Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).

> Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a) . . . [U]nauthenticated documents cannot be considered in a motion for summary judgment.

Id.; Hal Roach Studios v. Richard Feiner and Company, Inc., 896 F.2d 1542, 1550-51 (9th Cir. 1989).

A.  Documentary Evidence

Although medical records may be admissible if authenticated, Fed. R. Evid. 803(6) & 901(11), plaintiff's Exhibits 1 (page of physician's notes), 3 (laboratory report), 12 (physician's orders), 14 (CDC Health Record Report) and 15 (medical records from Vaca Valley Hospital) are not authenticated.  Because plaintiff has offered nothing to permit the court to determine that the documents are in fact what plaintiff claims, they are hearsay and will not be considered.

/////

---

[1]  Defendants also object to plaintiff's exhibit 19, which is a copy of the Supplement to the Pretrial Order.  The court has not considered this document because it has no bearing on the issues before the court, though it would be subject to judicial notice.  Fed. R. Evid. 201.

1    Defendants have argued that Exhibits 2 (DOM Custody/Security Operations

2 Regarding Health Records), 9 (DOM provisions on Nursing Services), 10 (DOM Nursing

3 Services Documentation Guidelines) and 18 (DOM provisions on transfers to outside medical

4 facility) are unauthenticated hearsay and lack foundation.  They have presented nothing

5 supporting their claim that sections of an operations manual are the equivalent of out-of-court

6 statements by a particular declarant.  See Fed. R. Evid. 801(c).  It appears that plaintiff is

7 complying with Local Rule 7-130(i), which requires a party to attach copies of "regulatory

8 authority . . . relied upon that has not been reported, published or codified" in a variety of

9 specified codes.  Finally, to the extent the regulations suggest that the defendants failed to follow

10 specified procedure, this may support plaintiff's claim of summary judgment.[2]

11    B.  Discovery Materials

12    Defendants object to plaintiff's Exhibits 4 (Collins' response to interrogatories),

13 5 (Collins' response to request for admissions), 6 (Carter's response to request for admissions),

14 7 (Carter's response to interrogatories), 8 (Carter's response to request for production of

15 documents), 11 (Smith's response to request for admissions), 13 (Smith's response to

16 interrogatories), 16 (Ho's response to interrogatories) and 17 (Ho's response to request for

17 admissions) on the ground that plaintiff has failed to identify which portions are relevant.  They

18 also argue that the exhibits are irrelevant, because they are essentially consistent with the

19 declarations submitted by the defendants.

20    Contrary to defendants' claims, plaintiff has pointed out which portions of the

21 discovery documents are relevant, though perhaps not with the precision a lawyer might use.

22 See, e.g., Opposition (Opp'n) at 14 (referring to particular answers to interrogatories).

23 Moreover, the discovery responses uniformly assert failures of recollection.  In the declarations,

24

25    [2]  As to defendants' objection that the regulations plaintiff has provided may be outdated,
defendants' counsel is in a position to provide copies of the rules in effect at the relevant time if
26 he believed those submitted by plaintiff were not the governing regulations.

5

1   in contrast, defendants provide detailed accounts of the events of December 9 and 10, 2001.

2   Although none of the declarants note that they referred to the medical records to refresh their

3   recollections, in the objections to plaintiff's evidence counsel concedes they did so. See, e.g.,

4   Objections at 3-4.[3]  Moreover, while the defendants sometimes justified their answers to

5   discovery on the ground that they did not have access to the medical records, see, e.g., Opp'n,

6   Ex. 16 (Ho Interrogatories), they did not always do so. Id., Ex. 6 (Carter's response to request for

7   admissions).  To the extent the exhibits raise credibility issues that might preclude summary

8   judgment, the court declines to strike them. See Earp v. Ornoski, 431 F.3d 1158, 1170 (9th Cir.

9   2005), cert. denied, ___ U.S. ___, 126 S. Ct. 2295 (2006).

10   III.  Facts

11           On Sunday, December 9, 2001, plaintiff visited the B-1 Medical Clinic at the

12   California Medical Facility because he was feeling unwell. Motion For Summary Judgment

13   (MSJ), Declaration Of Yuvette Carter (Carter Decl.) ¶ 4; Complaint (Compl.) at 3, ¶ 5.[4]  Because

14   it was Sunday, the clinic did not have a full medical staff working. Carter Decl. ¶ 4; Compl. at 3,

15   ¶ 2.

16           Defendant Carter, a Medical Technical Assistant (MTA) was working, along with

17   defendant Smith. Carter Decl. ¶ 4; Compl. at 4, ¶ 7. Plaintiff told Carter he was on several

18   medications for high blood pressure. Carter took plaintiff's blood pressure and determined it was

19   low. Carter Decl. ¶ 4; Compl. at 4, ¶ 6. According to defendant Carter, based on her

20   observations and consultation with defendant Smith, she did not believe plaintiff needed

21   emergency medical attention; according to plaintiff, defendant Carter told him that because of the

22

---

23        [3] It is unclear whether defendants' failure to refer to the medical records was an attempt

24   to avoid attaching copies of the records as required by Federal Rule Civil Procedure 56(e).
Arguably, because of this lapse, the declarations are not competent evidence in support of the
motion for summary judgment. Cermetek, Inc. v. Butler Avpak, Inc., 573 F.2d 1370, 1377 (9th

25   Cir. 1978).  Plaintiff has not objected on this ground, however.

26        [4] The complaint is verified by plaintiff.

1  medications, his system was shutting down.  Carter Decl. ¶ 4; Compl. at 4, ¶ 6.  Defendant Smith

2  wrote plaintiff a pass to see the doctor on December 10.  Compl. at 4, ¶ 7.  Plaintiff returned to

3  his job, but he became weak, with chills and vision problems.  Compl. at 5, ¶ 10.

4            Plaintiff arrived at the B-3 Clinic on the morning of December 10, 2001, and told

5  the MTA that not only was his blood pressure low, he was urinating blood.  Compl. at 5-6, ¶ 13.

6  The MTA gave him a container for a urine sample and instructed plaintiff to return to the clinic

7  that afternoon.  Id.  The MTA told defendant Ho, one of the clinic's doctors, that plaintiff

8  claimed to be urinating blood, but did not describe any other symptoms.  MSJ, Declaration of Dr.

9  Chao Ho (Ho Decl.) ¶ 7.  Ho told the MTA to secure a urine sample from plaintiff and to

10  schedule an appointment for plaintiff that afternoon.  Ho Decl. ¶ 7; Compl. at 6, ¶ 16.  Although

11  Ho was in the room when plaintiff was talking to the MTA, defendant Ho could not hear the

12  discussion.  Ho Decl. ¶ 7.  He did not join in the conversation.  Compl. at 6-7, ¶ 16.

13            At 1:30 p.m, plaintiff returned to the clinic with the urine sample, which he gave

14  to defendant Collins, an MTA.  MSJ, Declaration of Eddie Collins (Collins Decl.) ¶ 5; Compl. at

15  6, ¶ 14.  Plaintiff describes the sample as being very bloody.  Compl. at 6, ¶ 14.  Plaintiff told

16  defendant Collins he was having both chills and hot sweats.  Collins Decl. ¶ 5; Compl. at 6, ¶ 15.

17  According to Collins, plaintiff did not appear to be in any distress nor did he appear feverish;

18  according to plaintiff, Collins said the symptoms could be the result of high blood pressure.

19  Collins Decl. ¶ 5; Compl. at 6, ¶ 15.

20            Collins consulted Ho, who told him the sample should be sent to the lab for

21  immediate testing and that plaintiff should return to the clinic, if necessary, when the test results

22  came back.  Collins Decl. ¶ 6; Ho Decl. ¶ 8.  Neither Ho nor Collins believed plaintiff was in

23  need of immediate medical attention; Ho believed plaintiff wanted a medical lay-in and some

24  Motrin for discomfort.  Collins Decl. ¶ 6; Ho Decl. ¶ 8.  According to Dr. Ho, plaintiff was given

25  some Motrin and a lay-in slip and instructed to return to the clinic if his symptoms got worse.

26  Ho Decl. ¶ 9.  Plaintiff avers, however, that he was told that the lab test would take three weeks

1  and he should return then.  Compl. at 6-7, ¶ 16.

2        Later on December 10th, Dr. Ho received an oral report from the lab, indicating a

3  urinary tract infection and prescribed the antibiotic Cipro.  Ho Decl. ¶ 10.  Ho says he had no

4  further involvement in plaintiff's treatment.  Id.

5        Plaintiff became increasingly ill and, as guards were getting a wheelchair for him,

6  he lost consciousness.  Compl. at 7, ¶ 18.  When he woke up, he was in an outside hospital,

7  seriously ill with a kidney infection.  Compl. at 7, ¶ 19.

8  IV.  Medical Care And The Eighth Amendment

9        In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that

10  inadequate medical care does not constitute cruel and unusual punishment cognizable under

11  section 1983 unless the mistreatment rises to the level of "deliberate indifference" to serious

12  medical needs.

13        In the Ninth Circuit, the test for deliberate indifference consists of
             two parts. First, the plaintiff must show a serious medical need by
14             demonstrating that failure to treat a prisoner's condition could
             result in further significant injury or the "unnecessary and wanton
15             infliction of pain. " Second, the plaintiff must show the defendant's
             response to the need was deliberately indifferent.  This second
16             prong-defendant's response to the need was deliberately
             indifferent-is satisfied by showing (a) a purposeful act or failure to
17             respond to a prisoner's pain or possible medical need and (b) harm
             caused by the indifference. Indifference may appear when prison
18             officials deny, delay or intentionally interfere with medical
             treatment, or it may be shown by the way in which prison
19             physicians provide medical care.

20  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see

21  also McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled in part on other

22  grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

23        However, a showing of merely inadvertent or even negligent medical care is not

24  enough to establish a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152

25  F.3d 1124, 1130 (9th Cir. 1998).  A difference of opinion about the proper course of treatment is

26  not deliberate indifference nor does a dispute between a prisoner and prison officials over the

1    necessity for or extent of medical treatment amount to a constitutional violation. <u>See</u>, <u>e.g.</u>,

2    <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058 (9th Cir. 2004); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th

3    Cir. 1989).

4            With regard to this claim, defendants have not presented sufficient information to

5    support their motion for summary judgment.  While each of the three defendants who has

6    submitted a declaration opines that he or she afforded plaintiff the appropriate treatment, this

7    position is not supported by any medical records to provide support for the ultimate claim that,

8    based on plaintiff's symptoms, defendants acted properly.  <u>Smith v. Jenkins</u>, 919 F.2d 90, 93 (8th

9    Cir. 1990) (suggesting the problems with granting a motion for summary judgment when the

10   inmate's medical records have not been provided to the court).  For example, defendant Carter

11   notes that she determined that plaintiff did not need emergency medical treatment, based on "the

12   results of my examination, as well as my own observations and consultation with Nurse Smith,"

13   yet she does not describe the results of her examination, except to note that plaintiff's blood

14   pressure was a little low.  Carter Decl. ¶ 4.  Moreover, she does not address the implications of

15   plaintiff's low blood pressure, particularly in light of the fact that plaintiff avers he told her he

16   took medication to control his blood pressure.  Compl. at 4, ¶ 6.  Moreover, plaintiff avers under

17   penalty of perjury that Carter told him that the low blood pressure meant his system was shutting

18   down, something that would seem to require emergency medical care.  Compl. at 4, ¶ 6.

19   Accordingly, there are disputed issues of material fact with respect to Smith's and Carter's initial

20   response to plaintiff's complaints.

21           Nor have defendants Collins and Ho established the absence of material fact.

22   While plaintiff avers he told Collins he was having both chills and sweats, Collins says merely

23   that plaintiff did not appear feverish; he does not say whether he actually took plaintiff's

24   temperature or explain why any failure to do so was appropriate in light of plaintiff's complaints.

25   Moreover, there are disputed facts with respect to the appearance of the urine sample: was it, in

26   essence, a "bottle of blood" as plaintiff claims, which suggests a more serious internal problem,

1   or was it unremarkable in appearance?  Compl. at 6, ¶ 14; Ho Decl. ¶ 8; Collins Decl. ¶ 5.

2   Moreover, nothing in Collins's and Ho's declarations suggests what the appropriate medical

3   response would be when a person complaining of low blood pressure, fever and chills and blood

4   in his urine reports to a medical clinic.  Accordingly, this court cannot find defendants have

5   borne their initial burden of demonstrating the absence of disputed issues of material fact.

6            IT IS HEREBY RECOMMENDED that defendants' motion for summary

7   judgment be denied.

8            These findings and recommendations are submitted to the United States District

9   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

10   days after being served with these findings and recommendations, any party may file written

11   objections with the court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13   shall be served and filed within ten days after service of the objections.  The parties are advised

14   that failure to file objections within the specified time may waive the right to appeal the District

15   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16   DATED:  August 2, 2006.

17

18                                              _____

19                                              UNITED STATES MAGISTRATE JUDGE

20   2
     bank0374.57

21

22

23

24

25

26